# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| RITA FREENEY, DEVOLYA HARRIS,<br>SHAREE MCKAY, PATRICIA ACREE,<br>JIMITRE SMITH, LMT TENANTS'<br>ASSOCIATION,<br>     Plaintiffs,<br><br>vs.<br><br>SANFORD HOUSING AUTHORITY,<br>ORLANDO HOUSING AUTHORITY,<br>SHAUN DONOVAN, Secretary of the United<br>States Department of Housing and Urban<br>Development, UNITED STATES<br>DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT,<br>     Defendants. | Case No.: 6:10 cv-1920-Orl-19DAB |

## FIRST AMENDED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

## I.  PRELIMINARY STATEMENT

1.     Plaintiffs, individuals and groups of residents of the Castle Brewer Court and William Clark Court public housing developments in Sanford, Florida, challenge the Defendants, Sanford Housing Authority (SHA), Orlando Housing Authority (OHA), the United States Department of Housing and Urban Development (HUD) and Shaun Donovan, Secretary of HUD (Secretary), with respect to their implementation of the relocation of the Plaintiffs and their fellow residents without any prior consultation, or the opportunity to challenge the basis for the relocation or any planning, assistance or opportunity to relocate to housing that is not in neighborhoods of minority or poverty

concentration.

2.    This relocation has already commenced and is proceeding at an accelerated pace.  Plaintiffs and their fellow residents, many of whom have lived in public housing for decades, were simply distributed a temporarily funded housing voucher (which does not provide the same benefits in either amount or duration as a permanent Section 8 voucher) and told to find a new place to live by December 10, 2010, later extended to January 2011. Residents are being relocated without any opportunity to comment on or to confront the demolition and relocation plans of the Housing Authority.  The Plaintiffs and their fellow residents have been provided with no assistance in identifying a new unit, no counseling in searching for a new unit and no transportation to view prospective units.   As a result, many residents are moving to the first available unit without regard to its amenities, neighborhood conditions, and accessibility to jobs, schools, churches, public transportation or other basic family requirements.

3.    The relocation undertaken by the SHA and OHA and approved by the Secretary and HUD is without any basis in law.  The relocation effort utilizes funding supplied by HUD for this purpose.  However, the Federal Defendants and the PHA Defendants appear not to agree on the bases for the relocation.  The PHA Defendants claim the relocation is part of the implementation of a plan to demolish the properties and permanently displace the residents which was submitted to HUD and the Secretary but which has not been approved by either.   This relocation proceeds in violation of the express language of 24 CFR § 970.25 which requires that, "[U]ntil the PHA receives HUD

approval, the PHA shall continue to meet its ACC obligations to maintain and operate the property as housing for low-income families."

4.     The Federal Defendants state the relocation is necessary because of the condition of the housing.  However, they have not provided the residents with any information regarding the alleged conditions or its imminent threat to the health and safety of the residents.

5.     The precipitous relocation, without any consultation with or planning by the residents, is effectively destroying their community and will render their community vacant and uninhabitable.  Plaintiffs are requesting that all relocation cease until the Defendant PHAs receive formal HUD approval for the proposed demolition, and further that any relocation that takes place include the provision of counseling to the residents in locating a new unit, assistance in locating a unit that is not located in a neighborhood of minority or poverty concentration and transportation to view those prospective units.

## II.  <u>JURISDICTION AND VENUE</u>

6.     This Court has jurisdiction over the claims presented in this action pursuant to 28 U.S.C. §§ 1331 (federal question), § 1343(a)(3) and §3613 (fair housing).  This action arises under the Fifth and Fourteenth Amendments to the Constitution of the United States of America; the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983; the Housing Act, 42 U.S.C. §§1437 and §3601; and the Administrative Procedures Act, 5 U.S.C. §701. Declaratory and injunctive relief is authorized under 28 U.S.C. § 2201, §2202 and §3601.

7.     Venue in the Middle  District of Florida is proper pursuant to Title 28 U.S.C. §

1391(e) in that Defendants, Sanford Housing Authority and Orlando Housing Authority, are residents of the Middle District of Florida and/or a substantial part of the activities complained of occurred in the Middle District of Florida and all the named Plaintiffs reside in this judicial district.

8.      The Plaintiffs' specific claims for relief against the Defendants, SHA and OHA (hereafter collectively "PHA Defendants") are predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, the Fair Housing Act, 42 U.S.C. §§ 3601 *et. seq.* and its implementing regulations, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

9.      Plaintiffs' claims for relief against the United States Department of Housing and Urban Development (HUD) and its Secretary (hereafter collectively "Federal Defendants") are authorized under 5 U.S.C. § 701, *et seq.*, the Administrative Procedure Act.

10.     Plaintiffs seek preliminary and permanent injunctive relief pursuant to Rules 57 and 65, Federal Rules of Civil Procedure.

### III.  PARTIES

### A.  PLAINTIFFS

11.     Plaintiff RITA A. FREENEY is a current resident of Castle Brewer Court public housing development.  Ms. Freeney, who is African American, is a single disabled mother of 49 years and on a fixed income, receiving SSI and food stamps.  Ms. Freeney,

whose children are grown, has resided in Castle Brewer Court since 2002 and desires to remain. She has no problems with her unit and believes Castle Brewer Court to be a good and desirable place to live. Ms. Freeney was pressured to accept a temporary voucher to relocate but has received no assistance to understand it or to locate a new or temporary home. Ms. Freeney does not want to move into an apartment or into another neighborhood. Because of her learning disabilities, Ms. Freeney has come to rely upon her neighbors in Castle Brewer Court as a part of her family. Her mother, age 80, also resides in another neighborhood of Sanford Housing Authority. Any move would be severely stressful for Ms. Freeney and deprive her of the relationships she has forged with those neighbors and particularly the local children.

12.     Plaintiff DEVOLYA R. HARRIS is a 24 year old African-American woman and resident of Castle Brewer Court public housing development in Sanford, Florida. Ms. Harris is married and the mother of four (4) children, a daughter age 5 and three boys, ages 3, 2, and 1. Ms. Harris and her family were relocated from Lake Monroe Terrace due to its substandard conditions and currently reside in a two bedroom apartment in Castle Brewer Court. She has been a resident of Sanford housing Authority for approximately four (4) years. Despite the availability of larger, appropriately sized units in Castle Brewer Court, Ms. Harris and her family have been denied a transfer and forced to accept a temporary voucher for permanent displacement outside the neighborhood. Importantly, Ms. Harris' daughter is enrolled in an "A" school and she adamantly does not want to move outside the jurisdiction. She and her family desire to remain in the Castle Brewer

Court community and the Castle Brewer Court neighborhood because it affords her family stable, affordable and suitable housing. Ms. Harris objects to the demolition of Castle Brewer Court and, along with other residents, was not included in the decision-making process in any meaningful way and only informed after the fact of the decisions made by SHA and OHA to demolish her home. Ms. Harris was informed that she was required to move from her home by January 2011 because "HUD will approve the application" for demolition. Over half the households in Castle Brewer Court have reportedly vacated, and the boarded up houses are visible to Ms. Harris and other remaining residents. Ms Harris has not received detailed counseling to understand the voucher she was issued or any assistance in locating housing in the neighborhood. Ms. Harris states that the relocation process going on around her is chaotic and many residents, including her, simply do not know what is happening or who is responsible to answer questions. If she is required to relocate, she would like the opportunity to move to a neighborhood where there is not a concentration of poverty and which remains close to schools, hospitals, church and public transportation. Ms. Harris seeks to remain at Castle Brewer Court and be a part of its rehabilitation, but, if forced to utilize the voucher, seeks to return as soon as able.

13. Plaintiff, SHAREE L. MCKAY, was a resident of William Clark Court public housing development in Sanford, Florida until she was forced to relocate with a temporary voucher in December 2010. Plaintiff McKay, who is African American, is a separated mother of four (4) children receiving SSI Disability and food stamps. She and three (3) of her children, boys ages 16, 10, and 7, relocated from a three (3) bedroom apartment in

William Clark Court public housing development to a home outside the city of Sanford in Lake Mary. Ms McKay lived in William Clark Court for approximately eleven (11) years and her rent upon moving was $6.00 per month. Ms. McKay believes that William Clark Court should not be demolished and that the conditions as stated in the applications for emergency relocation and inventory removal are not accurate. Ms. McKay did not receive the assistance promised from SHA/OHA in explaining the voucher or locating a new home and was not kept informed or notified about the inspection of that home. Ms. McKay was not notified about the demolition of her home in William Clark until after the decision was made nor was she allowed to ask questions about or participate in the decision making process. Ms. McKay states that the relocation process going on around her is chaotic and many residents simply do not know what is happening and are making decisions without thought or guidance. Ms. McKay believes William Clark Court can be and should be preserved and desires to participate in the decision making process to preserve and redevelop the neighborhood including a right to return.

14.     Plaintiff, PATRICIA A. ACREE, was a resident of Castle Brewer Court public housing development in Sanford, Florida until she was forced to relocate in December. Ms. Acree is a 56 year old single mother who lives with her 19 year old son. Ms. Acree was not involved in the decision to demolish her home and would not have moved if she was not being forced to do so. Ms. Acree is unsure of her future as a voucher holder since, unlike public housing, her new private landlord is not required to renew her lease each year. The move for Ms. Acree was extremely stressful and completed without the

assistance of SHA because she believed she had to be out by December 10, 2010. When she moved, she understood that her rent would be paid for four months, a misunderstanding shared by many other residents. Ms. Acree just learned that her moving expenses will not be reimbursed and that she must pay her monthly rent to the new landlord. Ms. Acree states that the moving was extremely stressful and the relocation process was so chaotic that many residents, including her, simply did not understand what was happening and were not provided the counseling to understand the voucher and payments to be made. As a result, Ms. Acree is even unsure of her future and seeks to preserve and rehabilitate William Clark and Castle Brewer Court, redevelop the SHA properties and return to SHA if and when she may need to do so.

15. Plaintiff, JIMITRE SMITH**,** was a resident of Lake Monroe Terrace public housing development in Sanford, Florida until recently relocated to a new home utilizing a temporary rental assistance voucher. Ms. Smith participated in the initial activities seeking emergency funding from HUD to relocate from and to redevelop Lake Monroe Terrace, one of the six public housing developments that comprise the SHA. Part of that effort included residents from Cowan Moughton Terrace and Edward Higgins Terrace. Ms. Smith is also the President of her tenants association, LMTTA, and the appointed Resident Advisory Board President. Ms. Smith located her new housing without the assistance of SHA and remains dissatisfied with the way in which the relocation continues to be handled. The OHA payment to her current landlord is already late. In her role as President, Ms. Smith has a right and obligation to provide input to the SHA/OHA but states that her right has

been denied. Ms. Smith was not asked to participate in any meetings to discuss the demolition of Castle Brewer Court or William Clark Court nor was she provided any documents explaining why either of these complexes required demolition. Ms. Smith is witness to the chaotic relocation process that brings residents to her each day seeking resolution to their frustration in reaching SHA/OHA staff. Ms. Smith affirmatively seeks to preserve and rehabilitate Castle Brewer Court and William Clark Court, to redevelop the SHA properties and to preserve the right of the residents to return to SHA if and when able to do so.

16. Plaintiff, LMT TENANTS' ASSOCIATION (LMTTA), is an unincorporated association of Sanford Housing Authority current and former residents. LMTTA is comprised of over 100 current and former residents from Lake Monroe Terrace, Cowan Moughton Terrace, Edward Higgins Terrace, Redding Gardens, Castle Brewer Court and William Clark Court public housing developments. The mission of LMTTA is to preserve SHA as affordable public housing in Sanford, Florida and to ensure that residents both past and present are permitted a voice in decisions affecting the demolition and replacement of their homes, that their housing needs are met, that they are treated fairly and lawfully in the event of any displacement, and that they receive all the relocation assistance to which they are entitled under the law. LMTTA was originally organized to assist the low income residents of Lake Monroe Terrace to obtain emergency funding to relocate away from the uninhabitable and severely distressed homes in Lake Monroe Terrace and to support efforts for the redevelopment of the neighborhood. The association now includes residents

from the entire Sanford Housing Authority properties and seeks to preserve those neighborhoods as stated above, specifically Castle Brewer Court and William Clark Court, from *unnecessary* demolition and to pursue the development of a *plan* for the redevelopment of SHA. LMTTA seeks to affirmatively provide input into the operation of the public housing project and remedy the chaotic relocation process that is proceeding unchecked at this date.

17. Members of the LMTTA who have relocated have regularly been unable to receive assistance from SHA/OHA to understand their vouchers, have been provided inaccurate rent payment information causing confusion and harassment from their new landlords including notices for eviction, have not been provided reimbursements for utility transfers or application fees in a fair and timely manner and continuously seek the intervention of the association to reach the responsible SHA/OHA parties to resolve the individual crises. This chaos is a result of the lack of information and availability of SHA/OHA staff during business hours and specifically during the Thanksgiving and Christmas holiday season with no reasonable alternative way to pursue resolution because the "relocation procedure manual" provided to residents is devoid of responsible party names, phone numbers and/or facsimile numbers.

18. Other members of LMTTA who remain in Castle Brewer Court, William Clark Court and other properties of Sanford Housing Authority are ignored or otherwise unable to obtain services while they witness the moves of residents around them resulting in units being boarded up thereby subjecting the remaining residents to potential blight

and hazardous conditions caused by the Defendants' accelerated efforts to empty the properties in preparation for demolition not yet approved by HUD.

19.     Members of the LMT Tenants Association have participated in meetings with SHA and OHA since the relocation commenced but were denied any meaningful opportunity to participate in the decision to demolish and/or relocate the residents of Castle Brewer Court and William Clark Court.  The members object to the demolition of Castle Brewer Court and William Clark Court and desire to have input into the decision to demolish Castle Brewer Court and William Clark Court.

20.     The members of LMTT further desire to have input into the chaotic on going relocation process that proceeds without regard to the rights of the residents.  The members believe they have been ill-informed about their rights and responsibilities regarding the vouchers issued to them, that they have been forced to relocate to areas without the benefit of time or assistance in making an informed choice and continue to suffer from the lack of access to information and support services necessary to preserve this much needed housing assistance.  The members desire to preserve their right to return to a rehabilitated SHA when able.

**B.  <u>DEFENDANTS</u>**

21.     Sanford Housing Authority (SHA) is a political subdivision of the State of Florida which owns and operates federally subsidized public housing projects including Castle Brewer Court and William Clark Court public housing project.   SHA  is a Public Housing Agency ("PHA") within the meaning of 42 U.S.C. § 1437 and administers the

11

federally subsidized and assisted public housing within its jurisdiction as authorized by the United States Housing Act and implementing federal regulations.

22.     Orlando Housing Authority (OHA) is a political subdivision of the State of Florida which, pursuant to an agreement with SHA, administers and operates the federally subsidized public housing projects of SHA, including Castle Brewer Court and William Clark Court public housing project. OHA is a Public Housing Agency ("PHA") within the meaning of 42 U.S.C. § 1437. At all times mentioned herein, OHA was operating as a PHA and was also operating as an agent for SHA.

23.     At all times relevant to this Complaint, each named PHA Defendant was acting under color of state law.

24.     Defendant United States Department of Housing and Urban Development (HUD) is the federal agency charged with administering the public housing programs and all the federal statutes, regulations, and procedures relating thereto.

25.     Defendant Shaun Donovan is Secretary of the United States Department of Housing and Urban Development (HUD) and, as such, is charged with the administration and enforcement of all functions, powers and duties of HUD, including those relating to the public housing program and the Fair Housing Act. Defendant Donovan is sued herein in his official capacity.

26.     PHA Defendants and Federal Defendants will collectively be referred to herein as "Defendants."

## IV.  STATUTORY AND REGULATORY SCHEME

### A.  Public Housing Demolitions and Displacement

27.     Castle Brewer Court and William Clark Court public housing developments in Sanford, Florida are owned by SHA, and operated by SHA in partnership with OHA, pursuant to the public housing program described in 42 U.S.C. § 1437 *et. seq.*

28.     As part of the administration of public housing, the Quality Housing and Work Responsibility Act of 1988 (QHWORA), 42 U.S.C. § 1437c-1(b)  requires every public housing authority to prepare and submit for HUD approval an "annual public housing agency plan" detailing the PHA's policies in the administration of its programs.   The PHA is required to set out in the PHA plan any plans for demolition of existing public housing projects.  42 U.S.C. § 1437c-1(d)(8).

29.     The development of the PHA Plan includes an extensive process for obtaining resident and public input, including 45 days advance public notice ( 24 CFR § 903.17 (b)) and a  public hearing at a location that is convenient  to the residents served by the PHA.  24 CFR § 903.17(a).

30.     A PHA may amend its PHA Plan.  However, any significant amendment must go through the same advance notice, hearing and comment procedures as the original plan.  24 CFR § 903.21.

31.     QHWORA further requires the PHA to certify in its PHA plan that it will "carry out the public housing agency plan in conformity with...[t]he Fair Housing Act...and [w]ill affirmatively further fair housing.  42 U.S.C. § 1437c-1(d)(16).

32.     42 U.S.C. § 1437p requires a PHA to obtain approval from HUD prior to demolishing any Public Housing Project.   The statute and the applicable regulations require that the PHA "must consult with residents who will be affected by the proposed action with respect to all demolition or disposition applications." 42 U.S.C § 1437p(b)(2); 24 CFR § 970.9(a).   In addition, the PHA must certify that the intention to apply to demolish the project was part of the PHA Plan.  42 U.S.C. 1437p(a)(3); 24 CFR § 970.7(a)(1).

33.     Finally, 24 CFR § 970.25 expressly provides that "until the PHA receives HUD approval, the PHA shall continue to meet its ACC obligations to maintain and operate the property as housing for low-income families."[1]

## V.  STATEMENT OF FACTS

34.     The SHA, with the assistance of OHA, administers six public housing projects.  Castle Brewer Court is a 125 unit family public housing project and comprised of 24  one (1) bedroom  units, 51 two (2) bedroom units, 37 three  (3) bedroom units, 12 four (4) bedroom units and one (1) five bedroom unit.

35.     William Clark Court is an 85 unit family public housing project comprised of 28 one (1) bedroom units, 26 two (2) bedroom units,  24 three (3) bedroom units and 7 four (4) bedroom units.

36.     Castle Brewer Court and William Clark Court together consist of 210 units of family public housing, providing homes for very poor, mostly African American, families.

---

[1]  The regulation goes on to permit "consolidation" which is inapplicable to the present case.

The families housed at Castle Brewer Court and William Clark Court are 99% minority and 96% African American.

37.     In its most recent PHA Plan,  SHA formally identified only one of its six public housing projects for demolition, Lake Monroe Terrace.  However, Cowan Moughton Terrace Public Housing Project (hereafter Cowan Moughton) and Edward Higgins Terrace Public Housing Project (hereafter Edward Higgins) were similarly considered for demolition pursuant to a Master Redevelopment Plan previously discussed with the residents and City officials.   A request for quote to implement that plan was publically issued in early 2009 with a lead developer selected and approved by the SHA Board.  Final negotiations between SHA and Michaels Development, the selected lead developer to partner with SHA, stalled in 2010 due to underlying financial problems within the SHA and the growing emergent unsafe conditions at Lake Monroe Terrace.  The residents in these three projects had been informed of the potential demolition and submitted appropriate comments to the Plan.

38.     At no time have Castle Brewer Court and/or William Clark Court ever been included in the SHA PHA Plan or underlying Redevelopment Plan as a potential target for demolition.  Nor has there ever been a public discussion about the complexes' demolition. In fact, there were recent discussions about extensive renovations to these projects underway at the time the relocations underlying this complaint commenced.   Thus the residents of these two projects had no reason to expect or to prepare for relocation and demolition.

39.     On September 24, 2010, at a *special unscheduled meeting* of the SHA, the PHA Board passed a Resolution approving an application to HUD for Capital Fund Emergency/Natural Disaster Funding to vacate Cowan Moughton and Edward Higgins, both of which had been targeted for demolition but not formally included in the annual PHA Plan.  SHA and OHA had recently received similar funding to assist in the vacating of Lake Monroe Terrace, the project described in the PHA Plan.

40.     However, at that same meeting and without any prior notice to the residents or the public, SHA and OHA also announced a request for funding to vacate Castle Brewer Court and William Clark Court.  Since this was not a regular meeting and because there had been no prior notice of any demolition plans impacting Castle Brewer or William Clark, few, if any, residents of those projects attended the meeting.

41.     The Capital Fund Emergency/Natural Disaster Funds are requests to HUD for advances against future Capital Funds for emergency repairs.  In this case, the request for funds was solely for relocation and not for repairs or rehabilitation.

42.     The intent of the SHA/OHA at all times has been to vacate and to demolish all five projects.

43.     At no time prior to the approval of the above stated resolution on September 24, 2010 were the tenants of Castle Brewer and William Clark ever informed that they may have to be relocated or that their homes might be demolished.     In fact, unless they attended the September 24, 2010 special unscheduled meeting of the SHA Board, they would have no way of learning about the application.

16

44.     On September 29, 2010, just as word of the action of the SHA on September 24 began to leak out to the residents, the SHA/OHA called an emergency meeting of the residents of Cowan Moughton, Edward Higgins, Castle Brewer and William Clark with barely 24 hours notice.   The notice took the form of a flyer posted to the residents' doors. At that meeting, the residents of Castle Brewer and William Clark were told *for the first time* that the Housing Authority would include their homes in a demolition application to HUD. Moreover, the Housing Authority announced that the residents would be required to vacate their homes before year end.  They were told that they could relocate to a private home or apartment and that their rent would be paid with the assistance of temporarily funded housing vouchers which provided temporary relocation assistance and different benefits than public housing.   SHA/OHA announced that relocation was to start immediately despite that HUD had not yet received or approved any application for demolition of the projects.

45.     No such action had ever been discussed before this meeting, nor was there any mention in the SHA PHA plan that Castle Brewer and William Clark should be or would be demolished.  The residents were provided barely 24 hours notice of this meeting, the only meeting on the subject of demolition of Castle Brewer and William Clark.   In fact, at the time of that meeting, the SHA Board had not yet considered or passed any resolution to seek HUD's approval for demolition.

46.     At the same meeting on September 29, 2010, the residents were next told that the demolition applications would be approved by the   Sanford PHA   Board   and

forwarded to HUD for final approval expected in a very short time.

47.     At the time of the above mentioned meeting, the applications were already developed and prepared for the SHA Board; there was no attempt made by the SHA or OHA to solicit input about the demolition application or to shape the relocation. The meeting simply announced the relocation to the surprised residents of Castle Brewer and William Clark with the most general overview about how the relocation would proceed.

48.     Neither the Application by the SHA/OHA to HUD for approval of the demolition of Castle Brewer and William Clark nor any of the supporting documents were shared with the residents in that meeting or made available to the residents for review.

49.     The representatives of the OHA at that meeting informed the residents that the applications for funding and demolition had been "fast tracked" by HUD and would be approved within a few days.

50.     On the same day, September 29, 2010, a few hours after that emergency resident meeting, the SHA Board held another unscheduled special Board meeting and passed a Resolution to request permission from HUD to demolish five public housing projects, including both Castle Brewer and William Clark, which had not been mentioned in the PHA Plan.

51.     At the time the SHA Board passed the Resolution approving the request to HUD, neither the residents nor their advocates had ever seen a copy of any application or the supporting documents. Indeed, the documents only became available later when they were posted not on the Sanford Housing Authority website but rather on the newly added

Sanford Housing Authority section of the Orlando Housing Authority website.

52.    Plaintiffs are informed and believe, and based upon that information and belief, allege that HUD has both informally and formally awarded Public Housing Defendants the requested funding to undertake the relocation described herein.    The funding simply provided for temporarily funded housing vouchers which provide only temporary relocation assistance and different benefits than public housing.

53.    The applications for permission to demolish Castle Brewer and William Clark were presented to HUD.    The applications are currently in process and have not yet received formal HUD approval.

54.    Despite the clear statutory and regulatory authority barring such activity, the PHA Defendants immediately commenced the process of vacating the Castle Brewer Court and William Clark Court projects, pressuring the residents to relocate and providing only temporary housing assistance.

55.    Plaintiffs, through their undersigned counsel, issued a formal written administrative complaint to the Federal Defendants who have refused to take any action to halt the illegal activity.  Despite that the PHA Defendants told residents that the relocation was due to the decision to demolish the properties, HUD responded to the administrative complaint that the long term status of the properties had not been determined and that the relocation is necessary due to the condition of he property.

56.    At no time have PHA Defendants or Federal Defendants provided Plaintiffs with any information that would require the complete vacating of Castle Brewer Court

and/or William Clark Court due to imminent threats to the health and safety of its residents. Plaintiffs allege that no conditions currently exist which would require the immediate and complete vacating of Castle Brewer Court and/or William Clark Court due to imminent threats to the health and safety of its residents or that the conditions currently existing at Castle Brewer Court and/or William Clark Court meet the criteria for demolition.

57.     None of the residents vacating the public housing projects are permitted to relocate to other public housing units in other complexes, rather all are required to utilize their temporary housing assistance to permanently relocate to privately owned housing in Seminole and neighboring counties.

58.     Plaintiffs have received no supportive assistance or substantive counseling regarding relocation or other options. They have received no assistance in locating suitable dwellings and no transportation or other assistance in searching for suitable dwellings.

59.     Despite generally accepted evidence that housing vouchers are extremely difficult to utilize for many of the poorest public housing income households, PHA Defendants have failed to provide any alternatives or follow up assistance. Without continued counseling, many of the poorest public housing residents are unable to maintain their vouchers for extended periods and thus end up homeless or doubled up with relatives.

60.     PHA Defendants have instructed Plaintiffs that they must start searching immediately for a new dwelling utilizing their temporary housing assistance voucher.

PHA Defendants have told Plaintiffs that they intend to have the housing projects totally vacated by the end of January 2011.

61.     Despite the fact that Castle Brewer and William Clark house almost exclusively African American families, SHA/OHA have provided no assistance to insure that these families are given an opportunity to move to communities that do not have concentrations of minorities or concentrations of poverty.

## VI . IRREPARABLE HARM

62.     As a result of Defendants' illegal activity, Plaintiffs have suffered and will continue to suffer irreparable harm in that with virtually no notice they are being required to vacate their long time homes, with little or no meaningful assistance to find a new home. They are forced to find a willing landlord and execute an agreement on too short notice with virtually no planning or understanding of the assistance in hand.   They have had no input or ability to comment on the demolition plans, the relocation plans, or the assistance promised.

63.     The relocation assistance provided to Plaintiffs and to their fellow residents is not long term housing assistance and is provided by the PHA Defendants only in expectation that longer term assistance may become available in the future.

64.     Plaintiffs remain unclear about the amount of temporary assistance and continue to experience delays in the reimbursement of relocation assistance promised including utility allowance payments and other moving expense reimbursements.

65.     This relocation is not only contrary to law but extremely stressful to these

families. They have been and are being told to relocate during the Thanksgiving to Christmas holiday time period without reasonable prior notice. Their children are forced to change schools without notice or preparation. Not only has this resulted in extreme stress and irremediable anxiety but it has forced them to choose locations and future housing in a desperate and hurried manner, solely as a result of the lack of notice, planning and assistance.

66.     The Plaintiffs and their fellow residents have submitted evidence and argument to HUD, urging against the approval of the demolition of Castle Brewer and William Clark. They believe that these projects do not meet the criteria for demolition and that they can be rehabilitated and maintained without the necessity of a precipitous vacating. However, if Plaintiffs' current homes at Castle Brewer and William Clark are vacated prior to HUD approval of the demolition, the buildings will rapidly disintegrate and fall into irremediable disrepair. This will effectively eliminate any other reasonable alternatives for preservation solely due to the impossible task of maintaining the vacant housing. Thus the demolition becomes a *fait accompli*.

67.     This will result in the destruction of the community wherein the Plaintiffs live and have established personal ties. As a result of the Defendants' actions, the Plaintiffs have lost or will lose their homes, have suffered or will suffer displacement from their community, and most of them will be denied the opportunity to reside in the current Sanford community and instead be dispersed throughout the area.

## VII. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(By All Plaintiffs Against Federal Defendants)**
**For Violation of Plaintiffs' Rights, Pursuant to the Fifth Amendment of the U.S.**
**Constitution, to Procedural Due Process by Approving Capital Grant Funding for**
**Relocation Without Providing Tenants with Notice and an Opportunity to be Heard**
**5 U.S.C. § 702**

68.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

69.     Each of the Plaintiffs has a constitutionally protected property interest in their continued tenancy at Castle Brewer Court and William Clark Court.

70.     Federal Defendants, by approving the use of Capital Fund Emergency/Natural Disaster funding expressly to relocate the SHA residents prior to providing any meaningful opportunity for notice and input and by their subsequent refusal to halt the illegal relocation even after administrative request to do so, are depriving Plaintiffs of their property interest without due process as provided by 5 U.S.C. §702 requiring notice or an opportunity to be heard.

71.     Federal Defendants have violated the Fifth Amendment to the United States Constitution by taking such action to deprive Plaintiffs of their property interest without due process of law.

## SECOND CLAIM FOR RELIEF

**(By All Plaintiffs Against PHA Defendants)**
**For Violation of Plaintiffs Right, Pursuant to the Fifth and Fourteenth Amendment**
**of the U.S. Constitution, to Procedural Due Process By Applying for Capital grant**
**Funding for Relocation Without Providing Tenant/Plaintiffs with Notice and an**

**Opportunity to be Heard**
**42 U.S.C. § 1983**

72.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

73.     Each of the Plaintiffs has a constitutionally protected property interest in their continued tenancy at Castle Brewer Court and William Clark Court.

74.     PHA Defendants, through the application and receipt of Capital Emergency/Natural Disaster funding without providing Plaintiffs or their fellow residents any meaningful opportunity to learn the bases for the application or to be heard with respect to the decision, and the PHA Defendants' use of those funds in precipitously forcing Plaintiffs to relocate from their long term homes, are depriving Plaintiffs of their property interest without providing them with notice or an opportunity to be heard.

75.     Defendants have violated the Fourteenth Amendment to the United States Constitution by taking action to deprive Plaintiffs of their property interest without due process of law.

**THIRD CLAIM FOR RELIEF**

**(By All Plaintiffs Against PHA Defendants)**
**For Violation of Plaintiffs Right, Pursuant to the Fifth and Fourteenth Amendment of the U.S. Constitution, to Procedural Due Process By Applying for Permission to Demolish Castle Brewer Court and William Clark Court Without Providing Tenant/Plaintiffs with Notice and an Opportunity to be Heard**
**42 U.S.C. § 1983**

76.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

77.     Each of the Plaintiffs has a constitutionally protected property interest in their continued tenancy at Castle Brewer Court and William Clark Court.

78.     PHA Defendants, through the application for demolition and removal from inventory of Castle Brewer Court and William Clark Court without providing Plaintiffs or their fellow residents any meaningful opportunity to learn the bases for the application or to be heard with respect to the decision, and the PHA Defendants' use of Emergency Capital Funds in precipitously forcing Plaintiffs to relocate from their long term homes, are depriving Plaintiffs of their property interest without providing them with notice or a meaningful opportunity to be heard.

79.     Defendants have violated the Fourteenth Amendment to the United States Constitution by taking action to deprive Plaintiffs of their property interest without due process of law.

## FOURTH CLAIM FOR RELIEF

**(By All Plaintiffs Against Federal Defendants)**
**For Failure To Comply With Provisions Of The United States Housing Act**
**(42 U.S.C. §1437p; 24 C.F.R. § 970 *et. seq.*)**
**5 U.S.C. § 702**

80.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

81.     PHA Defendants are proceeding to vacate Castle Brewer Court and William Clark Court public housing projects and to cease operating them as public housing projects prior to obtaining any approval from Federal Defendants of PHA Defendants' demolition

plans.

82.     Federal Defendants expressly approved of, endorsed and funded PHA Defendants' illegal actions by providing Capital Fund Emergency/Natural Disaster funding expressly to relocate residents prior to approving any application for demolition.

83.     Plaintiffs complained to Federal Defendants administratively regarding the consequences of their provision of funding to the PHA Defendants for relocation and presented detailed evidence of the consequence of those actions.  Despite those complaints, Federal Defendants made no attempt to correct or to investigate the illegal activity but instead ratified their prior decision, again stating that the relocation, and dispersal of residents prior to approval of the demolition, is simply a "consolidation."

84.     HUD's actions in approving, funding and subsequently ratifying the relocation of the residents of Castle Brewer Court and William Clark Court public housing projects are  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in that the actions are contrary to the plain meaning of 42 U.S.C. § 1437p and implementing regulations 24 CFR § 970.25.

**FIFTH CLAIM FOR RELIEF**

**(By All Plaintiffs Against Federal Defendants)**
**For Violation of Federal Defendants' Duty Under 42 U.S.C. § 3608(e)(5) To**
**Affirmatively Further Fair Housing.**
**5 U.S.C. § 702**

85.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

86.     The Federal Defendants have an affirmative obligation pursuant to 42 U.S.C.

§ 3608(e)(5) to administer their programs "in a manner affirmatively to further" fair housing.

87.	Federal Defendants have violated the Fair Housing Act, 42 U.S.C. § 3608(e)(5) by failing to consider the fair housing implications of their decision to fund and otherwise support the precipitous relocation of the residents of Castle Brewer Court and William Clark Court without prior notice or meaningful opportunity for planning. Federal Defendants at no time solicited or considered viable alternatives to this unlawful disposition which would have had a less severe impact on this exclusively minority community. Despite Plaintiffs' complaints and requests for input, the Federal Defendants at no time made any effort to investigate or to determine if PHA Defendants had been provided any or adequate counseling, or any assistance whatsoever in locating housing in areas of lower poverty or lower concentrations of minorities. Indeed, Federal Defendants failed to investigate or make any effort to determine whether PHA Defendants provided any assistance whatsoever to this overwhelmingly poor African American community.

## SIXTH CLAIM FOR RELIEF
### (By All Plaintiffs Against PHA Defendants)
### For Violation of PHA Defendants' Duty To Affirmatively Further Fair Housing

88.	Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

89.	The PHA Defendants have an affirmative obligation pursuant to the provisions of the Fair Housing Act to administer their programs "in a manner affirmatively to further" fair housing.

90.     Each PHA must certify in their Annual PHA Plan that "it will carry out the public housing program of the agency in conformity with Title VI of the Civil Rights Act of 1964, the Fair Housing Act, section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990, and will affirmatively further fair housing."

91.     PHA Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* by failing to consider the fair housing implications of their decision to cause the precipitous and accelerated relocation of the residents of Castle Brewer Court and William Clark Court without adequate prior notice or meaningful opportunity for participation and/or planning.  Nor did PHA Defendants solicit or consider viable alternatives which would have less severe or adverse fair housing effects.

92.     At no time did the PHA Defendants review or assess its relocation program with respect to any impediments to fair housing choice, or address any fair housing impediments, or otherwise undertake any initiative(s) or actions to affirmatively further fair housing choices of the residents or maintain records reflecting these analyses and actions.

93.     Indeed, despite the overwhelmingly poor and African American population of this community, PHA Defendants have provided virtually no meaningful relocation assistance or counseling.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**(Against All Defendants)**
**Violation of the Uniform Relocation Assistance And Real Property Acquisition Act of 1970 and Implementing Regulations**
**5 U.S.C. § 702**

94.     Plaintiffs incorporate by reference herein each and every allegation of paragraphs 1 through 67 as though fully set forth herein.

95.     The Uniform Relocation Assistance And Real Property Acquisition Act of 1970, as amended, 42 U.S.C. § 4601, *et seq.*, and implementing HUD regulations provides that in any project assisted with federal funds, no one may be displaced unless there is a comparable, affordable, decent, safe and sanitary unit available to serve as replacement housing.   HUD has implemented the Act through regulations at 24 C.F.R. Part 42.

96.     Plaintiffs are being displaced solely through the use of Capital Fund Emergency/Natural Disaster Funding.   The applicable regulations governing Capital Fund Emergency/Natural Disaster Funding, at 24 CFR § 968.108, provide that, with respect to relocation due to capital grants, the Uniform Relocation Act applies:

> Relocation assistance for displaced persons.   A ``displaced person'' (defined in paragraph (g) of this section) must be provided relocation assistance at the levels described in, and in accordance with the requirements of, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended (URA) (42 U.S.C. 4601-4655) and implementing regulations at 49 CFR part 24.   *Id.*

97.     Thus Plaintiffs, at the time of their displacement, will be "displaced persons" within the meaning of the Act in that they will have become displaced as a direct result of Capital Fund Emergency/Natural Disaster Funding from HUD.   Nevertheless, Defendants have failed and/or refused to develop a relocation plan that conforms to the requirements of the Act and the implementing regulations.

98.     The Relocation Plan developed by Defendants fails to conform to the Act in

numerous respects. For example, the Plan fails to provide the following:

(1)     That relocation housing must be in a location no less desirable than the displacement housing;

(2)     That relocation housing must be in a location accessible to the relocatees work, the relocatees' children's school, and other necessary facilities;

(3)     That relocation assistance can, at the option of the tenant, be provided in a lump sum for the purposes of purchasing a dwelling;

(4)     That the tenant may, at their option, choose either a lump sum payment calculated as set forth in the regulations or reimbursement for actual moving expenses;

(5)     That the tenant has a right to appeal any adverse determination, first to the County and then to HUD and that notices will inform the tenant of this right;

(6)     That the tenant has a right to additional financial assistance if a comparable replacement dwelling rented with the Section 8 voucher would require the tenant to pay more than 30% of their income in rent.

(7)     That relocation assistance must continue for at least forty two months after relocation.

99.     In addition to the foregoing, the reliance by Defendants upon housing vouchers, albeit temporary housing vouchers, in a housing market in which such vouchers are extremely difficult to use, violates the guarantee that the displaced person will be guaranteed adequate replacement housing for at least 42 months. Moreover, the economic downturn which has enabled many residents to locate and pay for units of bedroom size greater than that provided reflects additional instability to the displaced resident.

## VIII.  RELIEF REQUESTED

**WHEREFORE**, Plaintiffs request this Honorable Court to:

A.     Declare that Federal Defendants have violated the Administrative Procedure Act by acting in a manner contrary to law regarding their decision to approve, fund and otherwise support the relocation of the residents of Castle Brewer Court and William Clark Court without permitting the residents an opportunity to comment and respond to the bases for their decision;

B.     Declare that PHA Defendants have violated 42 U.S.C. 1983, the Fifth and Fourteenth Amendment to the U.S. Constitution, by the compulsory relocating of the residents of Castle Brewer Court and William Clark Court without permitting the residents a meaningful opportunity to comment and to respond to the bases for their decision;

C.     Declare that Federal Defendants have violated the Administrative Procedure Act by acting in an arbitrary and capricious manner regarding their decision to approve, fund and otherwise support the relocation of the residents of Castle Brewer Court and William Clark Court prior to approval of a demolition and in violation of 42 U.S.C. 1437p and applicable regulations;

D.     Declare that Federal Defendants have violated the Administrative Procedure Act by acting in a manner contrary to law regarding their decision to approve, fund and otherwise support the relocation of the residents of Castle Brewer Court and William Clark Court without providing relocation benefits that are guaranteed by 42 U.S.C. § 4601, *et.seq.*;

E.     Declare that Federal Defendants have violated the Fair Housing Act, 42 U.S.C. § 3608(c)(5) by failing to affirmatively further fair housing by failing and refusing to consider the racial and socioeconomic effects of their decisions to approve, fund and otherwise support the relocation of the residents of Castle Brewer Court and William Clark Court;

F.     Declare that the PHA Defendants have violated the Fair Housing Act by failing to affirmatively further fair housing by failing to consider the racial and socioeconomic effects of their decisions to relocate the residents of Castle Brewer Court and William Clark Court;

G.     Issue temporary, preliminary and permanent injunctive relief:

a.     halting all compulsory relocation of Castle Brewer Court and William Clark Court until Defendants comply with their obligations under the Fifth and Fourteenth Amendments to the U.S. Constitution;

b.     halting all compulsory relocation of Castle Brewer Court and William Clark Court pending Defendants' review of the racial and socioeconomic impacts of

the relocation;

      c.     order that Plaintiffs and all residents of Castle Brewer Court and William Clark Court, whether or not they have relocated, receive all the benefits and counseling required under the Uniform Relocation Act;

      d.     order that Plaintiffs and all residents of Castle Brewer Court and William Clark Court, whether or not they have relocated, receive mobility counseling, relocation counseling and be offered relocation housing in neighborhoods which are not racially concentrated and which do not have concentrations of poverty;

      e.     order that Plaintiffs and all residents of Castle Brewer Court and William Clark Court who have not received mobility counseling and relocation counseling or who have relocated to neighborhoods that are racially concentrated or have concentrations of poverty be permitted to move if, after receiving counseling and an offer of desegregative relocation housing, they desire to relocate;

      f.     order that all residents, whether or not they have relocated, receive notification of this ruling and be informed that they are no longer required to relocate.

      H.     Award Plaintiffs' costs, expenses and reasonable attorneys' fees pursuant to 42 U.S.C. § 3613, 42 U.S.C.§ 1988, the Equal Access to Justice Act, 28 U.S.C. § 2412 and other applicable law;

      I.     Grant such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,           Dated: <u>January 10, 2011</u>

<u>**s/Deborah M. Hallisky**</u>
Deborah M. Hallisky, Esq.
Community Legal Services of Mid- Florida, Inc.
Florida Bar No.: 0226180
Stephanie S. St. Louis, Esq.
Florida Bar No.: 0036594
128 Orange Avenue, Suite 100
Daytona Beach, Florida 32114-4310
Phone:      (386) 255-6573 ext. 2410
Facsimile:    (386) 257-6824
deborahh@clsmf.org
Attorneys for Plaintiffs

**s/Charles Elsesser, Jr.**
Charles Elsesser, Jr.
Fla. Bar No.971162
Purvi Shah
Fla. Bar No. 30595
Florida Legal Services, Inc.
3000 Biscayne Blvd. Suite 102
Miami, Florida   33137
Phone:          (305) 573-0092 ext. 208
Facsimile:      (305) 576-9664
Charles@floridalegal.org


## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on  January 10, 2011,  I electronically filed the foregoing

**Amended** Complaint with the Clerk of the Court utilizing the CM/ECF system which will

send a notice of electronic filing to the attorney(s) of record.   A copy of the foregoing has

been included with the original summonses for service upon all named Defendants.


**s/Deborah M. Hallisky**
**Community Legal Services of Mid-Florida, Inc.**
Deborah M. Hallisky, Esquire
Florida Bar No.: 0226180
128 Orange Ave., Suite 100
Daytona Beach, FL 32114
Phone:          (386) 255.6573
Facsimile:      (386) 257.6824
deborahh@clsmf.org
Attorney for Plaintiffs