UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RITA FREENEY, DEVOLYA HARRIS, SHAREE MCKAY, PATRICIA ACREE, JIMITRE SMITH, LMT TENANTS' ASSOCIATION,

      Plaintiff,

v.

SANFORD HOUSING AUTHORITY, ORLANDO HOUSING AUTHORITY, SHAUN DONOVAN, Secretary of the United States Department of Housing and Urban Development, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

      Defendants.

_____/

CASE NO.: 6:10-cv-01920-JA-DAB

**DEFENDANT, ORLANDO HOUSING AUTHORITY'S**
**<u>MOTION TO DISMISS</u>**

    Defendant, Orlando Housing Authority (hereinafter referred to as "OHA"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12, hereby moves this Honorable Court to dismiss Plaintiffs' Complaint and in support hereof states as follows:

    1.    Plaintiffs have alleged in Count II of the Complaint that this Defendant, OHA, violated their civil rights guaranteed to them by the United States Constitution and in particular their rights to be provided notice and an opportunity to be heard pursuant to the Fifth and Fourteenth Amendments under 42 U.S.C. §1983. Count II of the Complaint is insufficient on its

1

face and fails to allege a cause of action under the Fifth and Fourteenth Amendments to the United States Constitution as more fully explained in Defendant's Memorandum of Law included herein. Since Count II fails to state a cause of action for violation of Plaintiffs' civil rights under the Fifth and Fourteenth Amendments, Plaintiffs' Complaint should be dismissed.

2. Plaintiffs have alleged in Count III of the Complaint that this Defendant, OHA, violated their civil rights guaranteed to them by the Fifth and Fourteenth Amendments by applying Capital Grant Funding for Relocation without providing Plaintiffs with notice and an opportunity to be heard. Count III of the Complaint is insufficient on its face and fails to allege a cause of action under the Fifth and Fourteenth Amendments to the United States Constitution as more fully explained in Defendant's Memorandum of Law included herein. Since Count III fails to state a cause of action for violation of Plaintiffs' civil rights under the Fifth and Fourteenth Amendments, Plaintiffs' Complaint should be dismissed.

3. Plaintiffs have alleged in Count VI of the Complaint that this Defendant, OHA, failed to affirmatively further fair housing. Count VI of the Complaint is insufficient on its face and fails to allege a cause of action as more fully explained in Defendant's Memorandum of Law included herein. Since Count VI fails to state a cause of action for violation of Plaintiffs' rights, Plaintiffs' Complaint should be dismissed.

4. Plaintiffs have alleged in Count VII of the Complaint that this Defendant, OHA, failed to comply with the Uniform Relocation Assistance and Real Property Acquisition Act of 1970. Count VII of the Complaint is insufficient on its face and fails to allege a cause of action under the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 as more fully explained in Defendant's Memorandum of Law included herein. Since Count VII fails to state a cause of action for violation of Plaintiffs' rights under the Uniform Relocation Assistance

and Real Property Acquisition Act of 1970, Plaintiffs' Complaint should be dismissed.

## MEMORANDUM OF LAW

### I. Motion to Dismiss Standard

When considering a motion to dismiss the Court must review the complaint in the light most favorable to the plaintiff and construe all allegations in the complaint as true. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). However, the purpose of the Federal Rule of Civil Procedure requiring the complaint to contain a short, plain statement of the basis for relief is to give a defendant fair notice of what Plaintiff's claim is and the grounds upon which it rests. *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, (11th Cir. 2008); FED.R.CIV.P. 8(a), 28 U.S.C.A. A plaintiff's obligation to provide the "grounds" of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Proctor v. White,* 2009 WL 12135869 (E.D. Ark). A court may dismiss a complaint on a dispositive issue of law. *Marshall Cty. Bd. Of Edc. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171 (11th Cir. 1993). Additionally, conclusory allegations "will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief." *Quality Foods De Centro America S.A. v. Latin America Agribusiness Devel. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).

### II. Background

#### A. Factual Background

For the purposes of this motion, Defendant, OHA, incorporates by reference the facts previously filed by the Plaintiffs and the Defendant in the Motion for Preliminary Injunctive Relief and Defendant's Response to Plaintiffs' Motion for Preliminary Injunctive Relief hereto.

However, OHA does not agree that the facts alleged by Plaintiffs are true for the purposes of any future motions.

### B. Plaintiffs' Lawsuit and the Named Parties

Plaintiffs have filed this lawsuit seeking injunctive and declaratory relief, such as, (1) declare that this Defendant violated 42 U.S.C. §1983, the Fifth and Fourteenth Amendments to the U.S. Constitution, (2) declare that this Defendant violated the Fair Housing Act; (3) enjoin this Defendant from enforcing compulsory relocation of Castle Brewer Court and William Clark Court until this Defendant complies with its obligations under the Fifth and Fourteenth Amendments to the U.S. Constitution; (4) enjoin this Defendant from enforcing compulsory relocation of Castle Brewer Court and William Clark Court until this Defendant reviews the racial and socioeconomic impacts of the relocation; (5) order that all Plaintiffs and all residents of Castle Brewer Court and William Clark Court receive all the benefits and counseling required under the Uniform Relocation Act; (6) order that all Plaintiffs and all residents of Castle Brewer Court and William Clark Court receive mobility and relocation counseling, and once they receive such counseling, be permitted to relocate if so desired; and (7) order that all residents of Castle Brewer Court and William Clark Court receive notification of this ruling and that they are no longer required to relocate. [Complaint, pp. A-G(f) pg. 31-32].

Defendants include the Sanford Housing Authority, OHA, Shaun Donovan, Secretary of the United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development (hereinafter referred to as "HUD").

The basis of Plaintiffs' claims for damages, as against Defendant, OHA, are contained in Counts II, III, VI and VII.

In pertinent part, Count II alleges the following:

1. At all times herein material, each of the Plaintiffs had a constitutionally protected property interest in their continued tenancy at Castle Brewer Court and William Clark Court. [Complaint, pp.74, pg. 24]

2. This Defendant's use of the Capital Emergency/Natural Disaster funds "in precipitously forcing Plaintiffs to relocate from their long term homes" is depriving Plaintiffs of their property interest without providing them with notice or an opportunity to be heard in violation of the Fifth and Fourteenth Amendments by taking action to deprive Plaintiffs of their property interest without due process of law. [Complaint, pp. 74-75 pg. 24]

Count III, in relevant part, alleges the following:

1. This Defendant's application for demolition and removal from inventory of Castle Brewer Court and William Clark Court and its use of Emergency Capital Funds in precipitously forcing Plaintiffs to relocate from their long term homes" are depriving Plaintiffs of their property interest without providing them with notice or an opportunity to be heard in violation of the Fifth and Fourteenth Amendments by taking action to deprive Plaintiffs of their property interest without due process of law. [Complaint, pp. 78-79 pg. 25]

In pertinent part, Count VI alleges the following:

1. This Defendant had an affirmative obligation to administer their programs "in a manner affirmatively to further" fair housing. [Complaint, pp. 89 pg. 27]

2. This Defendant violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* by failing to consider the fair housing implications of its decision to cause the precipitous and accelerated relocation of the residents of Castle Brewer Court and William Clark Court without adequate prior notice or meaningful opportunity for participation and/or planning. This Defendant did not solicit or consider viable alternatives which would have less severe or adverse fair housing

5

effects. Additionally, this Defendant has provided virtually no meaningful relocation assistance or counseling. [Complaint, pp. 90-93 pg. 28]

Count VII, in relevant part, alleges the following:

1. This Defendant has failed and/or refused to develop a relocation plan that conforms to the requirements of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, as amended, 42 U.S.C. §4601, *et seq.,* and the implementing regulations. [Complaint, pp. 94-97 pg. 29]

### III. Law and Argument

The various claims Plaintiffs assert against Defendant, ORLANDO HOUSING AUTHORITY, are legally deficient on the face of the Complaint as set forth below.

#### A. Plaintiffs Cannot Support a Cognizable Due Process Claim

Plaintiff's Due Process claims are based on the erroneous proposition that they have a protected property interest in their particular units. [Complaint, pp. 71 and 75 pg. 23-24] However, Plaintiffs have no constitutionally protected substantive due process interest either in their current units or in any housing of a particular quality or character. *Lindsey v. Normet,* 405 U.S. 56, 74 (1972) (there is no "constitutional guarantee of access to dwellings of a particular quality"); *see also, Acevado v. Nassau County,* 500 F.2d 1078, 1080-1081 (2d Cir. 1974); *Bosely v. Euclid,* 496 F.2d 193, 196 (6th Cir. 1974). Further, as explained in more detail below, the only protected property interest that Plaintiffs conceivably have for procedural due process purposes is their interest in the government benefit of subsidized housing. Because OHA and HUD continue to provide that benefit to the Plaintiffs, there has been no deprivation of any property interest sufficient to support Plaintiffs' due process claim.

The initial inquiry in a due process claim is whether Plaintiffs have been deprived of a

protected "property interest" to which they have a "legitimate claim of entitlement." *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 822 (4th Cir. 1984) (internal citations omitted). Plaintiffs have not been deprived of such a property interest in this case, and, therefore, have not been unconstitutionally deprived of their right to due process. "To have a protected property interest in the receipt of a public benefit – such as public housing – 'a person must have more than an abstract need or desire for it,' or 'a unilateral expectation of it,' for he must 'have a legitimate claim of entitlement to it.'" *Hanrahan v. Housing and Redevelopment Authority of Duluth, Minnesota,* 912 F. Supp. 428, 435 (D. Minn. 1995) (*citing Board of Regents v. Roth,* 408 U.S. 564, 577 (1972))

Plaintiffs here claim that their due process rights have been violated because they have been required to move from their units without notice and a hearing. [Complaint, pp. 74-75 and 78-79 pg. 24-25] However because Plaintiffs' have no protected property interest in a particular public housing unit, they fail to state a cognizable procedural due process claim.

Plaintiffs clearly do not have a protected property interest in any particular unit of public housing. Property interests are created and defined "by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents,* 408 U.S. at 577. There is no dispute that the statutes, rules and policies regarding eligibility for federally subsidized housing create a protected property interest in the continued receipt of such housing benefits. However, there is nothing in those statutes, rules and policies that can be interpreted as creating a property interest in a particular unit of housing or even a unit in a particular location. *See also, Hanrahan,* 912 F. Supp. 428, 435 (D. Minn. 1995) (finding that plaintiff had no property interest in a particular unit of public housing).

7

Courts have recognized a property interest in continued public housing assistance. However Plaintiffs have not been deprived of this property interest. Plaintiffs do not and cannot allege that they have not received and/or were not offered Tenant Based Rental Assistance and if that was not taken advantage of, Section 8 housing vouchers. Plaintiffs continue to receive subsidized housing benefits from the federal government through OHA. None have lost any of their benefits. Plaintiffs continue to receive subsidized housing. They seem to assert they have a constitutional right to remain in their current unit at their current property. However, no such constitutional right exists. Plaintiffs, therefore, cannot claim that they have been deprived of their housing assistance benefit. Plaintiffs have not been deprived of a property interest subject to due process and their claim should be dismissed.

### B. <u>Plaintiffs' Claims Are Unripe</u>

Plaintiffs' claims alleging displacement are unripe. The ripeness doctrine reflects both "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services,* 509 U.S. 43, 57 n. 18 (1993). Constitutional ripeness requires a plaintiff to show that he "will sustain immediate injury and that such injury would be redressed by the relief requested." *Cinel v. Connick,* 15 F. 3d 1338, 1341 (5th Cir. 1994) (citations and internal punctuation omitted). Prudential ripeness depends upon "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808 (2003). Plaintiffs' claims are unripe under both sets of principles. Ripeness in the constitutional sense is lacking because, as explained above, Plaintiffs do not face the prospect of an "immediate" injury.

As to prudential ripeness, even assuming *arguendo* that the issues were currently fit for review, withholding review could not cause any hardship to the Plaintiffs because they have not

alleged a credible and immediate threat of displacement and permanent relocation. Since the demolition has yet to be approved and permanent relocation has yet to be enforced, Plaintiffs cannot have felt the effects. *Abbott Labs v. Gardner,* 387 U.S. 136, 148 (1967). In these circumstances, Plaintiffs will not experience any hardship from deferring review.

In this matter, Plaintiffs have filed suit before HUD has approved Defendant, OHA's demolition application and before Defendant, OHA, has taken any action regarding permanent relocation of Plaintiffs, seeking to compel this Court to enter an order directing the outcome of HUD and OHA's decisions, if and when they should decide to take such action. This demand by Plaintiffs is fundamentally inconsistent with established principles of judicial review of such action. *See Coconut Grove House, Inc. v. U.S. Dept. of Health and Human Services,* 805 F. Supp. 39 (S.D. Fla. 1992) ("While the execution of the lease may be well contemplated, there is a possibility it might never occur. Therefore, at this time, this case is not ripe for judicial review.") The Eleventh Circuit Court of Appeals has already established that "claims are less likely to be considered 'fit' for adjudication … when they require "speculation about contingent future events." *Pitman v. Coles,* 267 F.3d at 1278 (*citing Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir. 1995)). As a result Plaintiffs' Complaint should be dismissed.

### C. Plaintiffs Lack Constitutional Standing

"Article III of the Constitution confines the federal courts to adjudicating actual 'causes' and controversies.'" *Allen v. Wright,* 468 U.S. 737, 750 (1984). In the absence of an actual case or controversy, the Court is without jurisdiction to decide the case. *See Warth v. Seldin,* 422 U.S. 490, 499 (1975); *see also Poe v. Ullman,* 367 U.S. 497, 502 (1961). The requirement that a litigant possess standing to sue "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Because

9

Plaintiffs lack standing, the Court should dismiss this action for lack of subject matter jurisdiction.

Article III's standing requirement contains three elements. First, "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal citations and punctuation omitted). Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citations and internal punctuation omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citations and internal punctuation omitted). Plaintiffs cannot satisfy these three elements.

With respect to their claims for "being displaced," Plaintiffs do not allege that they are presently injured, but instead assert the possibility that they will suffer a future injury. A plaintiff cannot establish standing based on the prospect of a "future injury" unless the threat of future injury is "sufficiently real and immediate." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03 (1983), and "certainly impending." *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990); *see also Lyons,* 461 U.S. at 101-02 ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (citations and internal punctuation omitted).

Plaintiffs make no such showing here. Although Plaintiffs have asserted without qualification that the Plaintiffs "are being displaced solely through the use of Capital Fund

Emergency/Natural Disaster Funding," they are not required to relocate until HUD approves demolition of the unit which has not happened as of this date. As previously explained although Defendant, OHA, applied to HUD for permission to demolish the housing units, the demolition application is still pending.

The injury Plaintiffs rely on to establish their standing – the imminent displacement and relocation from their housing units – is a manufactured one. No demolition application has been approved by HUD as of this date. Because any potential future demolition depends on the occurrence of a number of uncertain future events, Plaintiffs have not shown that they face any imminent injury. Instead, their allegations amount to precisely the kind of "someday" intentions without any description of concrete plans, or indeed any specification of when the someday will be" that are inadequate to show an actual or imminent injury. *Lujan,* 504 U.S. at 564 (emphasis in original).

As a result, Plaintiffs fail to satisfy the injury criterion with respect to their actual displacement claim. Therefore, there is no possibility that they can establish either the traceability or redressability criteria; a non-existent injury cannot be traceable to a defendant's actions nor redressable by a favorable court decision. *See Lawson v. Callahan,* 111 F.3d 403, 405 (5th Cir. 1997) ("Necessarily, having shown no injury, neither can plaintiff show causation. Finally, she cannot show that a favorable decision by the court would redress any alleged injury."). Accordingly the Complaint should be dismissed because Plaintiffs do not possess standing to assert their claims.

### D. Plaintiffs Fail to Properly Allege and Cannot Support a Claim of Municipal Liability

Plaintiffs' Complaint against Defendant, OHA, fails because they cannot satisfy the extremely demanding proof requirements under *Monell v. Depart. Of Social Services,* 436 U.S.

658 (1978), and its progeny. "[M]unicipal liability attaches only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be said to represent official policy, inflicts the injury' complained of." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1294 (3d Cir. 1997) (quoting *Monell*, 436 U.S. at 694), *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 607 (6th Cir. 2007). Plaintiffs must prove (1) the existence of a clear and persistent pattern of violating federal rights, (2) the notice or constructive notice on the part of the municipal decision makers, (3) the tacit approval of the unconstitutional conduct, and (4) that the custom was the moving force, or the direct causal link for the constitutional deprivation. [*Id.* at 607.] Assuming *arguendo* Plaintiffs have a constitutional right at issue, Plaintiffs have failed to allege a specific policy or custom was the moving force behind any alleged constitutional deprivations. *Montana v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008), *Novcitsky v. City of Auroa*, 491 F.3d 1244, 1259 (10th Cir. 2007), *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).

In this case, Plaintiffs have not asserted any facts that support their allegations that Defendant, OHA, knew of and acquiesced in the alleged violation of federal law regarding the constitutional rights of Plaintiffs. Further, Plaintiffs offer no prior instances that would show notice or constructive notice on the part of the municipal decision-makers. Proof of a single incident is not sufficient to impose liability unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which can be attributed to a municipal policymaker. *Mann v. Yarnell*, 497 F.3 822, 827-28, (8th Cir. 2007). It is well established that an isolated incident or series of incidents will not suffice to establish municipal liability under *Monell. See, e.g., Robert S. v. City of Philadelphia,* 2000 WL 341565 (E.D. Pa. Mar. 30, 2000) ("[t]hree examples of violations are insufficient evidence that violating the policy, rather than the

policy itself, is the true policy or practice"), *aff'd*. 256 F. 3d 159 (3d Cir. 2001); *City of Oklahoma City v. Tuttle,* 471 U.S. 824 ("where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary" to establish municipal liability). Plaintiffs have failed to plead there was a widespread practice or custom by OHA, which approved, acquiesced, or encouraged this alleged behavior. Therefore, Plaintiffs' claims should be dismissed as a matter of law.

### E. Plaintiffs' Cannot Support a Fifth Amendment Claim

Plaintiffs can obtain no relief under the Fifth Amendment as their allegations concern a state actor – Defendant, OHA. The Fifth Amendment only applies to federal officials, not state actors. *See McKinney v. Orange County*, 2007 WL 113254 (M.D. Fla. 2007) ("This is because the Fifth Amendment applies only to the federal government, while the Fourteenth Amendment applies to state actors. *See, e.g. Nat'l Parks Conservation Ass'n v. Norton,* 324 F. 3d 1229, 1241 n. 4 (11th Cir. 2003)); *Copeland v. Bradenton Police Dep't*, 2008 WL 3889588 (M.D. Fla. 2008); *Gonzalez v. City of Lakeland*, 2006 WL 1319445 (M.D. Fla. 2006). Because Plaintiffs allege due process violations not by federal officials, but by a state actor – OHA– their Fifth Amendment claim against OHA should be dismissed.

### F. Plaintiffs' Claims for Purported Violations of 42 U.S.C. § 3601, *et seq.*, Must Be Dismissed

To prove intentional discrimination, a plaintiff must demonstrate that some discriminatory purpose was a "motivating factor" behind the challenged action. *Community Services, Inc., V. Wind Gap Municipal Authority,* 421 F.3d 170, 177 (3d Cir. 2005); *Tsombanidis v. City of West Haven,* 129 F. Supp. 2d 136, 151 (D. Conn. 2001) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 97 S. Ct. 555, 568 (1977)); *Bonasera v. City of Norcross,* 2009 WL 2569079 (11th Cir. 2009), *citing Reese v. Miami Dade County*, 242 F.Supp. 2d 1292 (S.

Fla. 2002). The plaintiff is required to show that a protected characteristic played a role in the defendant's decision to treat her differently. *Id.* (referencing *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 97 S. Ct. 555 (1977). The court must use the burden-shifting analytical framework from *McDonnell Douglas Corp. v. Green,* 93 S. Ct. 1817 (1973), to analyze claims of intentional discrimination. *See Regional Economic Community Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 48 (2d Cir. 2002).

Under this approach, a plaintiff "must first establish a prima facie case of discrimination." *Id.* at 48. If the plaintiffs make out a prima facie case, then the burden of production shifts to the defendants to provide a legitimate, nondiscriminatory reason for their decision. *Id.* at 48-49 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 120 S.Ct. 2097, 2106 (2000)). If defendants meet that burden, "the *McDonnell Douglas* framework ... disappear[s] and the sole remaining issue [is] discrimination *vel non."* *Id.* (quoting *Reeves,* 120 S.Ct. at 2106. Plaintiffs "must then prove that the defendants intentionally discriminated against them on a prohibited ground." *Id.*

To prevail on a disparate treatment claim, a plaintiff must demonstrate that the challenged action results in or can be predicted to result in a disparate impact upon a protected class compared to the relevant population as a whole. *Bonasera v. City of Norcross,* 2009 WL 2569097 (11th Cir. 2009), *citing Jackson v. Okaloosa County,* 21 F.3d 1531 (11th Cir. 1994). Additionally "a plaintiff [alleging disparate impact] need not show the defendant's action was based on any discriminatory intent," but "must prove the [facially neutral] practice 'actually or predictably results in. . . discrimination.' " *Tsombanidis*, 352 F.3d at 575 (quoting *Hack v. President & Fellows of Yale College,* 237 F.3d 81, 90 (2d Cir.2000)). A plaintiff has not met its burden if it merely raises an inference of discriminatory impact. *See Gamble v. City of Escondido,* 104 F.3d 300, 306 (9th Cir. 1997). "Furthermore, the plaintiff must show a causal

connection between the facially neutral policy and the alleged discriminatory effect." *Hack*, 237 F.3d at 90.

"Once a plaintiff establishes a prima facie case [of disparate impact], the burden shifts to the defendant[s] to 'prove that [their] actions furthered, in theory and in practice, a legitimate, bona fide. . . interest and that no alternative would serve that interest with less discriminatory effect.'" *Salute v. Stratford Greens Garden Apartments,* 136 F.3d 293, 302 (2d Cir.1998) (quoting *Huntington Branch, N.A.A. C.P. v. Town of Huntington,* 844 F.2d 926, 936 (2d Cir.), *aff'd,* 109 S.Ct. 276 (1988) (per curiam)). In order to prevail on their disparate impact claims, Plaintiffs must prove that Defendant's relocation program has a discriminatory impact on the availability of housing for the residents or the terms and conditions on which that housing is offered.

In this matter, Plaintiffs have failed to allege with any specificity any discriminatory practices by Defendant, OHA. There are no specific allegations that Defendant, OHA, engaged in any discriminatory practices based on a protected characteristic and no specific allegations of any action by OHA causing a disparate impact. Therefore, Plaintiffs' Fair Housing Act ("FHA") claim fails because Plaintiffs have failed to sufficiently allege any discriminatory intent or disparate impact caused by Defendant, OHA.

### G. As a Matter of Law, Plaintiffs Have No Private Right of Action Under the Uniform Relocation Assistance And Real Property Acquisition Act of 1970 That is Enforceable Through §1983

Count VII of the Complaint should also be dismissed because the Court does not have jurisdiction over the subject matter and Plaintiffs fail to state a claim. Plaintiffs allege that Defendant, OHA, has violated the Uniform Relocation Assistance and Real Property Act, 42 U.S.C. § 4601, *et seq.* (hereinafter "URA"). Plaintiffs' claims for relief against OHA are predicated upon 42 U.S.C. § 1983. [Complaint, pp. 8 pg. 4]

In order to prove that Congress has intended to create a private right that is enforceable through §1983, a plaintiff must establish (1) that Congress intended that the statute in question benefit the plaintiff; (2) that the right protected by the statute is not so "vague and amorphous" that its enforcement necessarily would strain judicial competence; and (3) that the statute unambiguously imposes a binding obligation on the state actor. *Arrington v. Helms,* 438 F.3d 1336, 1352 (11th Cir. 2006) (*citing Blessing v. Freestone,* 520 U.S. 329, 340-41 (1997)) and *31 Foster Children v. Bush,* 329 F.3d 1255, 1270 (11th Cir. 2003)(*citing Gonzaga v. Doe,* 536 U.S. 273, 280 (2002).

When a statutory provision on its face regulates interactions between a federal agency and the entities it is charged with overseeing, generally no intent to create a private right of action is indicated without express and unambiguous language creating such a right. *Alexander v. Sandoval,* 532 U.S. 275, 286 (plaintiffs in suit against state agency cannot sue to enforce §602 of Title VI of Civil Rights Act of 1964 because Congress did not intend to create private right of action; *see also Gonzaga University v. Doe,* 536 U.S. 273 (2002) (plaintiff could not bring § 1983 suit for violation of Family Educational Rights and Privacy Act ("FERPA") because statute was funding legislation that did not unambiguously confer private right); *Hill v. Group Three Housing Dec. Corp.,* 799 F.2d 385 (8th Cir. 1986) (Section 8 program creates no implied right of action); *Banks v. Dallas Housing Authority,* 271 F.3d 605, 611 (5th Cir. 2001) ("Congress does not intend to create a private right of action where a statute is phrased as a directive to federal agencies engaged in the distribution of federal funds.") (internal citations omitted).

The Eleventh Circuit has held unequivocally that jurisdiction does not lie for claims alleging violations of the URA. *See Ackerley Communications of Florida, Inc. v. Henderson,* 881 F.2d 990 (11th Cir. 1989) (remanding case with directions to dismiss for lack of subject matter

jurisdiction). In *Ackerley,* the plaintiffs brought a § 1983 action to enforce the URA. The Court found that Congress intended for the URA to be reviewed under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq. Id.* at 991. Courts in other jurisdictions have held likewise. *See Supreme Oil Co. v. Metropolitan Transp. Authority,* 157 F.3d 148, 151 (2nd Cir. 1998); *National Railroad Passenger Corp. v. Faber Enterprises, Inc.,* 931 F.2d 438, 443 (7th Cir. 1991); *Thompson v. Mobile Airport Authority,* 2000 WL 284266 (S.D. Ala 2000).

Moreover, Plaintiffs cannot sue Defendant, OHA, under the Administrative Procedure Act, 5 U.S.C. § 702, because the acts of OHA do not constitute "agency action" within the meaning of the statute. *Guesnon v. McHenry,* 539 F.2d 1075 (5th Cir. 1976). However, assuming *arguendo* that the Court has jurisdiction to review claims under the URA, in the instant case Plaintiffs have not alleged that they have exhausted their administrative remedies under the APA and as such the claim should be dismissed. *Dalton v. City of Law Vegas,* No. 07-2216, 2008 WL 2372695, 282 Fed. Appx. 652, at *3 (10th Cir. June 12, 2008).

Because there is no support or textual basis in the Uniform Relocation Act of 1970 for a conferred private right that the Plaintiffs can enforce through either an implied right of action or §1983, Plaintiffs' claims against Defendant, OHA, for violations of the URA must be dismissed.

### H. Plaintiffs Cannot State a Claim Against Defendant, Orlando Housing Authority, for Violation of the Uniform Relocation Assistance and Real Property Act

Plaintiffs' claim under the Uniform Relocation Act ("URA") fails because the URA does not apply to temporary relocations like this one. The URA "establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4621(b). The URA defines "displaced person," in relevant part, as "any person who moves from real property

<mark>
</mark>

… on which such person is a residential tenant … as a direct result of rehabilitation, demolition, or … other displacing activity … under a program or project undertaken … with Federal financial assistance in any case in which the head of the displacing agency determines that such displacement is permanent." *Id.* § 4601(6)(A)(i). Consistent with this statutory definition, regulations make clear that persons temporarily displaced are not "displaced persons" within the meaning of the URA. 49 C.F.R. § 24.2(a)(9)(ii)(D); *see also McQueen v. Phila. Hous. Auth.,* No. Civ. A. 02-8941, 2003 WL 22533726, at *6 (E.D. Pa. Sept. 26, 2003). Until such time as the demolition applications are approved, relocation of the Plaintiffs is temporary. Therefore, the temporary nature of the relocation defeats Plaintiffs' URA claims and the URA is not applicable. Since the law is clear that persons temporarily displaced are not subject to the URA, Plaintiffs' claim should be dismissed.

## I. Conclusion

In summary, Count II and Count III of Plaintiffs' Complaint, which allege Fifth and Fourteenth Amendment violations for deprivation of property interests without due process of law, must fail since (1) the Plaintiffs do not have a constitutionally protected substantive due process interest either in their current units or in any housing of a particular quality or character and (2) OHA and HUD continue to provide the benefit of subsidized housing to the Plaintiffs, therefore not depriving them of a protected property interest to which they have a legitimate claim of entitlement. Additionally, Plaintiffs fail to allege a specific policy or custom that was the moving force behind any alleged constitutional deprivation, therefore defeating any claim of municipal liability as alleged by the Plaintiffs. Moreover, the Fifth Amendment only pertains to federal officials, not state actors such as the OHA. Accordingly, Counts II and III of Plaintiffs' Complaint should be dismissed.

Count VI alleges that OHA violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, however Plaintiffs failed to establish a prima facie case of either discrimination or disparate treatment. Plaintiffs' failure to allege with any specificity any discriminatory practices by OHA should result in the dismissal of Count VI of Plaintiffs' Complaint.

Lastly, Count VII alleges that OHA failed and/or refused to develop a relocation plan that conforms to the requirements of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C. § 4601, *et seq.* The URA is to be reviewed under the Administrative Procedure Act, 5 U.S.C. § 551, *et. seq.,* and there is no jurisdiction for claims alleging violations of the URA under 42 U.S.C. § 1983. Moreover, Plaintiffs cannot sue OHA under the APA because the acts of OHA do not constitute an "agency action" within the meaning of the statute. As a result, Count VII of Plaintiffs' Complaint must be dismissed.

For the reasons discussed above, Plaintiffs' Complaint is deficient and should be dismissed.

WHEREFORE Defendant, ORLANDO HOUSING AUTHORITY, moves this Honorable Court for an order granting their Motion to Dismiss.

Respectfully submitted on this 9th day of February, 2011.

BELL & ROPER, P.A.

*/s/ Joseph D. Tessitore, Esquire*
JOSEPH D. TESSITORE, ESQUIRE
Florida Bar #0992364

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of February, 2011, I electronically filed the foregoing document was filed electronically via the Court's ECF system which will send electronic notice to: **Deborah M. Hallisky, Esquire, Stephanie S. St. Louis, Esquire**, Community Legal Services of Mid-Florida, Inc., 128 Orange Avenue, Suite 100, Daytona Beach,

Florida  32114-4310; **Charles Elsesser, Jr., Esquire**, Purvi Shah, Florida Legal Services, Inc., 3000 Biscayne Blvd., Suite 450, Miami, Florida  33137; **Wendy M. Doty, Esquire, Robert E. O'Neill, Esquire, Tony West, Esquire**, Federal Programs Branch U.S. Department of Justice, Civil Division, 20 Massachusetts Avenue NW, Room 7218, Washington, DC  20001; and **Richard N. Asfar, Esquire**, **J.F. Carraway, Esquire, Hugh H. Marthinsen, Esquire,** Saxon, Gilmore, Carraway & Gibbons, P.A., 201 E. Kennedy Boulevard, Suite 600, Tampa, Florida 33602.

/s/ *Joseph D. Tessitore, Esquire*
MICHAEL J. ROPER, ESQUIRE
Florida Bar #0473227
mroper@bellroperlaw.com
JOSEPH D. TESSITORE, ESQUIRE
Florida Bar #0992364
jtessitore@bellroperlaw.com
Bell & Roper, P.A.
2707 East Jefferson Street
Orlando, Florida  32803
(407) 897-5150
(407) 897-3332 (Facsimile)
Attorneys for Defendant,
Orlando Housing Authority