# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RITA FREENEY, DEVOLYA HARRIS, SHAREE MCKAY, PATRICIA ACREE, JIMITRE SMITH, and LMT TENANTS' ASSOCIATION,**

        **Plaintiffs,**

**-vs-**                     **Case No. 6:10-cv-1920-Orl-28DAB**

**SANFORD HOUSING AUTHORITY, ORLANDO HOUSING AUTHORITY, SHAUN DONOVAN, Secretary of the United States Department of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**

        **Defendants.**

## ORDER

Plaintiffs, who describe themselves as "individuals and groups of residents of the Castle Brewer Court and William Clark Court public housing developments in Sanford, Florida," (Doc. 6 at 1), have filed this lawsuit alleging violations of several federal statutes and of their right to procedural due process under the U.S. Constitution. Named as Defendants are the Sanford Housing Authority ("SHA"), the Orlando Housing Authority ("OHA"), the United States Department of Housing and Urban Development ("HUD"), and the HUD Secretary.

This case is currently before the Court on Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 7). Defendants have filed responses (Docs. 20, 21, & 31) thereto. The Court heard argument on the motion on January 27, 2011 and now issues the following ruling.

## I.  Background

SHA, through OHA, administers six housing projects:  Castle Brewer Court, William Clark Court, Lake Monroe Terrace, Cowan Moughton Terrace, Edward Higgins Terrace, and Redding Gardens.  Plaintiff Jimitre Smith is a former resident of Lake Monroe Terrace, and the other individual Plaintiffs are current or former residents of Castle Brewer Court ("Castle Brewer") or William Clark Court ("William Clark").

SHA was in receivership during 2003-2006, but in January 2006 HUD returned it to local control.  However, an assessment conducted by HUD in early 2010 reflected that since SHA had been returned to local control there had "been little or no oversight on spending by the management or leadership" of SHA and that "SHA's public housing developments have been poorly maintained and there is a high degree of deferred maintenance."  (Ex. A to Doc. 20, at 2). During 2010, it was determined that many SHA units, including units at Castle Brewer and William Clark, were uninhabitable due to pest infestations and lack of maintenance.  OHA was asked to assume management of SHA, and in August 2010 OHA entered into a temporary services agreement with SHA for day-to-day operations.

Based on the poor condition of the units at Castle Brewer and William Clark, in late September 2010 OHA sought emergency funds from HUD so that residents of Castle Brewer and William Clark could be relocated until OHA could determine a long-term housing solution for them.  Also in late September 2010—but separate from the request for emergency funding—OHA applied to HUD for approval to demolish Castle Brewer and William Clark.  On October 1, 2010, HUD approved OHA's application for emergency relocation funding.  The demolition application, however, has not yet been determined by HUD and remains pending.

Meetings with residents were held in September and October 2010 to discuss the benefits available pursuant to the emergency relocation funding; these benefits included payment of moving costs as well as utility bills and deposits.  All but one of the individual Plaintiffs in this case—by accepting the emergency assistance being offered—have already relocated.

Plaintiffs filed this lawsuit on December 23, 2010.  (Doc. 1).  In their Amended Complaint (Doc. 6), Plaintiffs allege seven claims, including several procedural due process claims under the U.S. Constitution as well as claims for alleged violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq., and the Uniform Relocation Assistance and Real Property Acquisition Act ("URA"), 42 U.S.C. §§ 4601-4655.  Plaintiffs filed their motion for preliminary injunctive relief (Doc. 7) on January 10, 2011.  The case was reassigned from another judge to me on January 11, 2011, and a hearing on the motion was immediately scheduled, (Doc. 13).  As earlier noted, that hearing was held on January 27, 2011.

In their motion for preliminary injunctive relief, Plaintiffs asserted that "[o]n September 29, 2010, [they] were told by representatives of SHA and OHA that all residents of Castle Brewer Court and William Clark Court would have to vacate their homes by mid-January 2011." (Doc. 7 at 2).  Plaintiffs further asserted that they "were told that the forced relocation was due to the need to demolish the properties and that the forced relocation was approved of, and funded by financing from" HUD.  (Id.).  Plaintiffs requested that the Court order the Defendants:  (1) to cease requiring Plaintiffs and other residents to vacate their public housing units without providing them the basis for the relocation and the opportunity to comment on it; (2) to provide Plaintiffs and other residents who choose or have chosen to relocate with all the benefits and services required under the URA; and (3) to provide Plaintiffs and other residents who choose

or have chosen to relocate with mobility counseling and relocation counseling and to offer Plaintiffs housing in neighborhoods that are not racially concentrated and that do not have concentrations of poverty. (Doc. 7 at 1-2).

During the hearing on the motion, however, Plaintiffs' counsel explained that because the properties are now 95% vacant, it is not feasible for Plaintiffs to stay there and Plaintiffs are no longer seeking to do so. Plaintiffs thus narrowed their request for relief to the provision of services and benefits to those occupants who remain, and they asserted entitlement to benefits under the URA. Defendants conceded during the hearing that the residents had been informed in September and October 2010 that OHA wanted them to vacate the properties and to avail themselves of the emergency relocation assistance before those benefits expired in four months, but Defendants denied that the residents are being required to leave by any specific date or at all.[1] The focus of the hearing became whether the remaining residents are entitled to benefits under the URA rather than the benefits that are being provided pursuant to the emergency grant of funds.

## II.  Discussion

### A.  Preliminary Injunction Standard

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the

---

[1] Plaintiffs' change in position as to not wanting to remain on the property rendered moot Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 8), in which Plaintiffs sought to enjoin Defendants "from taking any action requiring Plaintiffs to involuntarily relocate, or informing Plaintiffs and fellow residents that they must involuntarily relocate," until the disposition of the motion for preliminary injunction, (id. at 4) (emphasis removed). The emergency motion shall be denied as moot in this Order.

injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "The preliminary injunction is an extraordinary and drastic remedy" and is not to be granted unless the movant clearly meets its burden of establishing each of the four requisites. United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983).

### B.  The Merits of Plaintiffs' Motion

Having considered argument of counsel and the written submissions of the parties, the Court concludes that Plaintiffs have not established entitlement to preliminary injunctive relief. Plaintiffs have now focused their argument on their assertion that residents of Castle Brewer and William Clark are entitled to the benefits and services provided for in the URA instead of the emergency relocation assistance that is being offered to them. However, the Court cannot conclude that the URA applies to the situation involved here.

The URA provides for certain benefits to "displaced persons," but in order to qualify as a "displaced person," a person's displacement must be "permanent." See 42 U.S.C. § 4601(6). Defendants argue that the residents at issue here have not been permanently displaced but instead are being offered relocation assistance so that they can immediately escape uninhabitable conditions while a determination is made about the fate of the housing projects. Plaintiffs counter that there has been no suggestion that these residents will ever be able to return to the housing units, regardless of what ultimately happens with the demolition application; thus, Plaintiffs argue that their displacement is "permanent."

It is undisputed that the demolition application filed by OHA regarding Castle Brewer and William Clark has not yet been ruled on by HUD.  Cost studies have been conducted regarding rehabilitation of the properties and demolition of the properties, but no determination has been made as to whether the properties will be demolished or rehabilitated.  The relocations that are occurring are due not to a pending demolition or rehabilitation but to the conditions at the properties, though some of the residents contest that the units are unlivable and initially sought to remain there.  The evidence before the Court indicates that the relocation of residents that is now underway is intended to benefit the residents by allowing them to leave the substandard conditions at the housing projects until the fate of the housing projects can be determined.

Defendants have persuasively argued that because no determination has been made as to the fate of the properties and because Plaintiffs are being offered relocation assistance due to the condition of the properties rather than being relocated pursuant to a plan to rehabilitate or demolish the properties, Plaintiffs have not yet been permanently displaced within the meaning of the URA.  According to the URA regulations, a person is "not displaced" if the person "is not required to relocate permanently as a direct result of a project," as determined in accordance with HUD guidelines.  49 C.F.R. § 24.2(a)(9)(ii)(D).

As explained by HUD at the preliminary injunction hearing, if the residents are displaced for longer than one year permanent benefits will then kick in.  Until that time, however, any displacement that does occur is not considered "permanent" by HUD.  Despite Plaintiffs' assertion that the residents are in fact being permanently displaced because there is no intention for them to go back to the units, on this record the Court cannot conclude that the residents are entitled to anything more than what they have received—an opportunity to escape substandard

conditions via emergency funding assistance.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 7) is **DENIED**.

2. Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 8) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida this 10th day of February, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record